## · Hastings *vs.* Lusk.

The *privilege* of counsel in advocating the rights of his client, and of the *party* himself where he manages his own cause, in a judicial proceeding, is as broad as that of a member of a legislative body ; however false and malicious may be a charge made by the counsel or the party upon such an occasion, affecting the reputation of another, an action of *slander* will not lie, provided that what is said be *pertinent* to the question under discussion ; the remedy is by *action on the case.*

Where, however, a verdict is rendered for the plaintiff in action of *slander,* the judgment will not be *arrested* if the *pertinency* of the words and the time of the utterance are put in issue and found against the defendant, although from the declaration it appear that the words were spoken in the course of a judical inquiry.

Error from the supreme court.  Lusk sued Hasting in an action of *slander,* for the speaking of words charging him with *perjury,* whilst testifying before a magistrate on an examination had before the magistrate on the return of a warrant issued against the defendant on the complaint of the plaintiff, that the defendant had threatened to shoot him, The defendant pleaded, 1. *Non cul.* ; 2. That at the time of the speaking of the words he was conducting his defence, without counsel, to the charge made against him, and that the words spoken by him were *pertinent* to the examination ; 3. A plea substantially like the second, and 4. A plea also substantially like the second, with the addition *that the words were spoken without any malice towards the plaintiff.* The plaintiff, *by leave of the court,* put in *double* replications to each of the special pleas: by the *first* replication to the first special plea, he says he ought not to be barred from having and maintaining his action, because the defendant *falsely* and *maliciously* spoke, &c. the said several false, malicious, scandalous and defamatory words, *without this :* that the same were *pertinent* or material to the said examination, as alleged by the defendant, concluding to the country.  The *second* replication to the first special plea was *precludi non,* because the said several false, malicious and defamatory words *were not uttered by the defendant while conducting his defence* upon the said examination, but

Hastings v. Lusk.

at other and different times thereon, to wit, *at the time*, in the said declaration stated, *in manner and form* as he the said defendant hath *in his said plea* in that behalf alleged. Similar replications were put in to the second and third special pleas. Upon the issues thus joined the cause was tried, and a verdict found for the plaintiff with six cents damages; the jury finding upon the plea of *non cul.*, that the defendant was guilty, &c. upon the first replication to the first special plea that the defendant *falsely* and *maliciously* spoke and published the defamatory words and that the same were not *pertinent*, &c. and upon the second replication to the same plea, that the words were not uttered by the defendant *while conducting his defence* upon the said examination, but at other and different times, and at the times in the declaration stated. The jury found in like manner as to the replications to the *second* and *third* special pleas. The defendant moved *in arrest*. The court refused to grant the motion and rendered judgment for the plaintiff. The following opinion was delivered by the chief justice:

" *By the Court*, NELSON, Ch. J. There can be no doubt that the words as charged in the declaration are actionable. 6 *Johns. R.* 82. 2 *Serg. & Rawle*, 469. The privilege of the defendant set up in the several pleas, namely, that the words were spoken while conducting his defence against a criminal charge, is fully met by the replications. They deny their *pertinency* and materiality, or that they were spoken in the course of the defence. Either afford a complete answer to the pleas. *Ring* v. *Wheeler*, 7 *Cowen*, 725. 1 *Holt's N. P.* 621, *and note*. 2 *Wendell*, 516. If the words were not spoken in conducting the defence, then there is no pretence of justification; and whether pertinent and material, cannot be determined on this motion. If they were not, the case of *Ring* v. *Wheeler*, is decisive upon this point against the defence. We may add, that at most, even if the defendant was right in respect to the law, the issues presented by the replications are but immaterial, and then the remedy is not by a motion in arrest, but for a re-

pleader. *Bacon's Abr. pl. M.* 2 *Tidd*, 829. 6 *Johns. R.* 1. 1 *Chit.* 633. Motion in arrest denied." The defendant sued out a writ of error.

*M. J. Bidwell*, for the plaintiff in error, insisted that an action of *slander* will not lie for any thing said by a party or by his counsel, in the course of a judicial proceeding, whether criminal or civil, provided that what is said be *pertinent* to the matter under inquiry. If the words be *maliciously* spoken, the remedy of the party is by *action on the case.* In support of this position, he cited, 4 *Co.* 15 ; *Bacon's Abr. tit. Slander, E.* 14 ; *Comyn's Dig. Action on the case for defamation, F.* 22 ; 2 *Burr.* 807 ; *Boulton or Moulton* v. *Clapham,* 1 *Sir Wm. Jones' R.* 431 ; *March,* 20, *S. C.* ; 3 *Starkie's Ev.* 873 : *Starkie on Slander,* 193 ; 1 *Barn. & Ald.* 232 ; 1 *Holt.* 621 ; 3 *Campb.* 295 ; 1 *Binney,* 178 ; 4 *Yeates,* 322; *Bulst.* 269 ; 1 *Viner,* 388 ; *Hob.* 328 ; 1 *Penn. N. J. R.* 233 ; *Anthon's N. P.* 180 : 2 *Wendell.* 515. He further insisted that to protect the defendant, it is not essential that he should strictly observe the technical mode of proceeding, citing *Boulton* v. *Clapham.* Here the *declaration* and the whole *record* show that the words were spoken in the course of a judicial proceeding. The finding of the jury that the words were *not pertinent,* cannot shut the eyes of the court, and prevent them from seeing, by an inspection of the *declaration,* and even of the *replications,* that the words were *pertinent,* however false or malicious they might be. It is the province of the court, and not of the jury, to pronounce upon the *pertinency* of the words, when enabled to do so by an inspection of the record ; and if, upon the whole record, the defendant is entitled to judgment, it will be rendered in his favor, notwithstanding the finding of the jury. So as to the finding upon the second replication, it does not help the plaintiff, for although it avers that the words were not uttered whilst the defendant was conducting his defence, it confesses that they were spoken *at the time in the declaration stated,* and that time was when the plaintiff was testifying.

Hastings v. Lusk.

*W. C. Noyes,* for the defendant in error, in answer to the above positions, submitted the following points and authorities: I. If all the special issues were immaterially joined, still as the general issue embraced and put in issue every fact necessary to be proved to sustain the action, and also embraced the same matters relied on as a defence to a greater extent than the pleas assert them, and as the jury have found for the plaintiff below upon all these facts, the motion in arrest was properly denied. · *Bird* v. *Randall,* 3 *Burr.* 1353, *Lake* v. *King,* 1 *Saund.* 131, *n.* (1). 1 *Chit. Pl.* 486. *Grah. P. R.* 641. 2. *R. S.* 425, §7, *sub.* 8. *Thompson* v. *Britton,* 14 *John's R.* 84.

II. The record discloses a good cause of action. The counsel in a cause, or the party, where he conducts it himself, is liable to an action for slander if he makes observations charging a witness with a criminal offence, or accuses him of perjury while testifying, or at any other time during the progress of the trial, where such observations or charges are irrelevant, and wilful and malicious. The jury in this case have found, as well upon the special issues as upon the general issue, that the charge made against the plaintiff below was not only wilful and malicious, but wholly impertinent and irrelevant. *Brook* v. *Montague, Cro. Jac.* 90. 1 *R. S.* 708, §13, 14. *Rosc. Ev. in Civil Cases,* 295. *Stark. Ev. pt.* 4, *p.* 875. *Cock. Clerk's Asst.* 52. 3 *Chitty's Gen. Pr.* 887. *Jacob's L. Dict.* "*Barrister.*" *Bull N. P.* 10. *Starkie on Slander,* 208. *Boulton* v. *Clapham, W. Jones' R.* 431 ; *S. C., Viner's Abr.* "*Action for words,*" (*C. a.*) *pl.* 3. *Kelyng's Cr. Cas.* 12, 23. *Hughes' case, Hob.* 326, *a.* *Wood* v. *Gunston, Styles,* 462. *Buckley* v. *Wood, Cro. Eliz.* 230, 247. *Dela Barre* v. *Jones, Hard. R.* 221. *Western* v. *Dobnier, Cro. Jac.* 432. *Astley* v. *Young,* 2 *Burr.* 807 : 2 *Ld. Kenyon,* 536, *S.C. Trotman* v. *Dunn,* 4 *Campb.* 211. *Hodgson* v. *Scarlet,* 1 *Holt,* 621 ; 1 *Barn. & Ald.* 232, *S. C. Suraingen* v. *Rich,* 4 *Yeates,* 322. *Vigours* v. *Palmer,* 1 *Brown,* 40. *Kease* v. *McLaughlin,* 2 *Serg. & Rawle,* 469. *McMillan* v. *Birch,* 1 *Binney,* 178. *Shute* v. *Barrett,* 7 *Pick. R.* 82. *Bradley* v. *Heath,* 12 *id.* 163. *McLaren* v. *Wetmore,* 6 *Johns. R.* 82. *Fox* v. *Van-*

derbeck, 5 Cowen, 513. Ring v. Wheeler, 7 id. 725. Allen v. Crofoot, 2 Wendell, 515.

After advisement, the following opinion was delivered :—

.By the CHANCELLOR. The principle involved in this case is of great importance to the community, inasmuch as it involves the rights and privileges of counsel and of parties in the investigation of suits and other proceedings before our judicial tribunals ; and as I believe it is the first cause of the kind which has been brought before this court of dernier resort, and has been very fully and most ably argued here by the counsel upon both sides, I have considered it my duty to examine the law on the subject more fully than would be necessary or proper in an ordinary case of mere verbal slander ; for it is not only right and proper that parties and their counsel should know what their privileges are, but also that the law should be deliberately and correctly settled. In applying the principles of law to the case under consideration we must, therefore, be careful on the one hand that we do not restrict counsel within such narrow limits that they will not dare to openly and fearlessly discharge their whole duty to their clients, or to themselves when they manage their own cases ; and on the other hand we must not furnish them with the shield of Zeus, and thereby enable them with impunity to destroy the characters of whomsoever they please.

There are two classes of *privileged communications* recognized in the law in reference to actions of slander, and the privileges of counsel may sometimes fall within the one class and sometimes within the other. In one class of cases, the law protects the defendant so far as not to impute malice to him from the mere fact of his having spoken words of the plaintiff which are in themselves actionable, though he may not be able to prove the truth of his allegations. But the plaintiff will be able to sustain his action for slander, if he can satisfy the jury, by other proof, that there was *actual malice* on the part of the defendant, and that he uttered the words for the mere purpose of defaming the plaintiff. In

Hastings v. Lusk.

the other class of cases the privilege is an effectual shield to the defendant ; so that no action of slander can be sustained against him, whatever his motive may have been in using the slanderous words.

One of the earliest cases of the first class is *Parson Prit's case*, reported by Rolle, 1 *Roll. Abr.* 87, *pl.* 5. Although the report of this case is very short, it will be perfectly understood by a reference to *Fox's Martyrology*, where the author, in giving an account of the severe punishments inflicted by the vengeance of heaven upon some of the persecutors of the protestants during the reign of the bloody Mary, states that *Grimwood*, or *Greenwood* as he is called by Rolle, one of the perjured witnesses who was hired to swear away the life of John Cooper, an innocent person, who was convicted and hanged, was soon after destroyed by the terrible judgment of God ; being suddenly seized while in perfect health, so violently that his bowels gushed out. From the report it appears the defendant, Parson *Prit*, having been recently settled in the parish, and not knowing all his parishioners, in preaching against the heinous sin of perjury cited this case, from the Book of Martyrs : and no doubt commented severely upon *Greenwood*, and upon *White*, his forsworn companion, who by their perjury had caused an innocent man to be drawn in quarters and his wife and children to be left desolate. It turned out, however, that Greenwood was not dead, and that being a resident of that parish, he was present in the church and heard the sermon, and afterwards brought a suit against the parson for charging him with perjury. But the court held that it was a *privileged communication*, and the circumstances under which the words were spoken showed there was no actual malice towards the plaintiff. *See also Cro. Jac.* 91. This case has been followed by a numerous class depending upon the same principle ; in which the speaking of the words is held to be a privileged communication, the occasion of the speaking being such, that *prima facie* there could have been no malicious intent to defame the person of whom they were spoken, and the interests of society requiring that the defendant should be permitted to speak freely in the situation

in which he is placed, provided he confine himself within the bounds of what he believes to be the truth. In cases of this kind, the defendant may avail himself of his privilege under the plea of the general issue, even under the new rules of pleading adopted in England. This was so decided in the recent case of *Lillie* v. *Price*, 2 *Harr. & Woll. R.* 645, in the court of king's bench; where Lord Denman, C. J. after taking time to consult with the judges, and referring to the new rule which delares the defence under the general issue in slander shall be the same as before, says : "We are all of opinion that this defence does not require to be pleaded specially. It goes to the very root of the action. It shows the party not guilty of malice, and consequently it is open to him without having pleaded it." The presumption in these cases, that there was no malice, is not rebutted by the plaintiff's merely showing that the charge against him was untrue in point of fact ; it must be further shown that the defendant either knew or had reason to believe it was untrue at the time of the speaking of the words complained of. *Kine* v. *Sewell*, 1 *Hom. & Hurl.* 83 ; 3 *Mees. & Wels.* 297, *S. C.* Proving that the defendant knew the charge to be false, would unquestionably be evidence of *express malice ;* and would destroy the defence in this class of cases.

As the plaintiff has a right to prove express malice in such cases, to sustain his action notwithstanding the privilege, it follows of course, that if the defendant attempt to set up his privilege as a defence by a special plea, he must not only plead the fact which rendered it a privileged communication, but he must deny the allegation in the declaration, that the words were *maliciously spoken,* to enable the plaintiff to go to the jury upon the question of actual malice, if he thinks proper to do so. *Smith* v. *Thomas*, 1 *Hodges' R.* 353. 2. *Bing. R. N. S.* 372, *S. C.* It follows, of course, upon a motion in arrest of judgment, if the charge of malice was denied in the plea, and issue taken thereon, or if the general issue only was pleaded, so that the plaintiff would be bound to prove express malice to entitled him to a verdict in this class of cases, the court must presume it was proved upon the trial ; although it should appear from the declara-

Hastings v. Lusk.

tion or other pleadings, that it was *prima facie* a privileged communication.

The *second class of priviliges* embraces words spoken by members of parliament, or of congress, or of the state legislature, in the discharge of their official duties in the house, for which no action of slander will lie, however false and malicious may be the charge against the private reputation of an individual. To this class, also, belong complaints made to grand juries and magistrates, charging persons with crimes for which no action of slander will lie, although express malice as well as the absolute falsity of the charge can be established by proof. But the law has provided a different remedy in cases of that kind, where, in addition to what has before been stated, it can be proved that the party who made the complaint had no *probable cause* for believing that the charge was true. Upon a full consideration of all the authorities on the subject, I think that the *privilege of counsel* in advocating the causes of their clients, and of parties who are conducting their own causes, belongs to the same class where they have confined themselves to what was *relevant* and *pertinent* to the question before the court, and that the motives with which they have spoken what was relevant and pertinent to the cause they were advocating, cannot be questioned in an action of slander. Thus far, it appears to be necessary to extend the privilege for the protection of the rights of parties; as those rights might sometimes be jeoparded if counsel were restrained from commenting freely upon the characters of witnesses, and the conduct of parties, when such comments were relevant, for fear of being harrassed with slander suits, and attempts to prove they were actuated by malicious motives in the discharge of their duty. Such I understand also to be the conclusion at which the court of king's bench arrived in the case of the present lord chief baron of the court of exchequer. *Hodgson v. Scarlett,* 1 *Barn. & Ald.* 232. *Holt's N. P.* 621. Although Mr. *Holt* has attempted to give a statement of what occurred *in banc,* as well as a report of the case at *nisi prius,* to understand the decision correctly it is necessary to examine the case in *Barnwell & Alderson,*

not only as to the final opinion of the judges, but also as to what occurred in the course of the argument. There was no question as to the fact that the plaintiff was nonsuited upon the opening, by *Baron Wood,* who held the assizes, without permitting him to go to the jury. He, therefore, had no opportunity to prove express malice, or to have it inferred from the manner in which the charge was made. His counsel upon the argument insisted that the learned judge had stopped the cause too soon, without hearing the evidence. To this it was answered that Baron Wood had reported that the counsel at the assizes admitted that the alleged slanderous words were used by the defendant as observations in a cause, and were pertinent to the matter in issue. But as there appeared to have been a misapprehension on this point, the court heard a statement of the proceedings in the original suit from the notes of Mr. Justice *Bailey,* who tried the cause. The plaintiff's counsel still contended there was a question which ought to have been left to the jury, as they were to say whether there was not malice to be *inferred* from the facts. Upon which Lord *Ellenborough* immediately enquired if the words were relevant, whether they were not within the protection of the law? And it was in answer to this part of the argument, that in delivering his final decision in the cause he said, although he admitted it might have been too much for the counsel to say that the attorney was wicked and fraudulent: "It appears to me that the words spoken were uttered in the original cause, and were relevant and pertinent to it, and consequently that this action is not maintainable."

I do not understand from this, however, that every thing that in any state of facts would be relevant and pertinent to the matter in question before the court, comes within this rule of protection, where those facts which would have rendered it relevant and pertinent do not exist. Thus, if counsel, in the argument of his client's cause should avail himself of that opportunity to say of a party, or of a witness, against whom there was nothing in the evidence to justify a suspicion of the kind, that he was a thief or a murderer, it might be a proper case for a jury to say wheth-

er the counsel was not actuated by malice, and improperly availed himself of his situation as counsel to defame the party or witness. Such appears to have been the opinion of the judges in the case of *Hodgson* v. *Scarlett*, and such also must have been the opinion of the supreme court of this state in the case of *Ring* v. *Wheeler*, 7 *Cowen*, 725— for the language of the defendant as stated in any of the seven first counts of the declaration in that case might have been relevant and pertinent, and the words charged in the fourth and sixth counts probably were relevant to the matter before the arbitrators, if the counsel was opening his defence, and merely stating what he expected to prove, according to the case of *Moulton* or *Boulton* v. *Clapham*, 1 *Rolle's Abr.* 87, which was so much relied upon by the counsel for the plaintiffs in error upon the argument of this cause. Upon the authority of that case, perhaps, they should have been considered as relevant and pertinent, even after verdict.

I do not, however, consider the case of *Moulton* v. *Clapham* as an authority for holding that every thing which may be said to the court or jury, by a party or his counsel, in the progress of a cause, as absolutely protected, although it was not relevant or pertinent to the matter in question, so as to preclude the party injured thereby from showing to a jury that the language was used maliciously, and for the mere purpose of defaming him. Many of these old cases are very imperfectly reported, and are therefore apt to mislead us, unless they are examined with care. This case, although it is to be found in *D'Anvers*, *Sir William Jones*, *March*, and in *Rolle's Abridgment*, is not stated by either two of them in precisely the same way. As reported by *Sir William Jones*, it would lead us to the conclusion that the court meant to decide that any thing said in court by a party in disaffirmance of what was sworn against him was absolutely protected, although found by the jury to have been said maliciously ; but by referring to *Rolle*, it will be seen that the language used by the defendant was addressed to the court, and was a mere statement that the affidavit was untrue, and that he would prove to them by forty wit-

nesses that it was so ; and therefore, it was holden that the action was not maintainable, as it appeared from the plaintiff's declaration that the answer made by the defendant to the affidavit was spoken merely in defence of himself, and in a legal and judicial way, " inasmuch as he said he would prove it by forty witnesses." Neither is the *dictum* of Cromwell's chief justice of the upper bench, *Style's R.* 462, to be taken as broadly as stated by the reporter, without knowing the state of facts in reference to which the dictum was applied. I presume he must have used this language in reference to words spoken by counsel in opening the defence of his client's cause to the jury, stating what he should prove. For he immediately adds, " it is his duty to speak for his client, and it shall be intended to be spoken according 'to his client's instructions." But surely no one can for a moment suppose the learned chief justice intended to say, that it was the duty of counsel to say any thing that was not relevant to the matter in question ; or to go beyond the case for the purpose of maligning a witness or the adverse party, although he might have been instructed to do so by his client. As I understand the case of *Brook* v. *Montague, Cro. Jac.* 90, the plea must have alleged that the words were spoken by the counsel in relation to the evidence which was *to be given* in favor of the jury against Brook, who had attainted them. He probably was instructed by his client that Brook had been convicted of felony ; and if so, he was probably incapable of proceeding in the attaint against the jury, as the law then stood. *Coke Litt.* 130, *a. Sleight* v. *Kane,* 2 *Johns. Cas.* 236. The language of the reporter is, that the counsel spoke the words *in evidence.* This certainly could not be so, as there was no pretence that the counsel was a witness on the trial. I have no doubt, therefore, that the language of the plea was that the counsel, in reference *to the matters to be given in evidence,* spake the words mentioned in the plaintiff's declaration, &c. and that by a slip of the reporter's pen, or otherwise, a part of the sentence is left out in the printed report. The case of *Badgley* v. *Hedges,* 1 *Penn. R.* 233, is like that of *Moulton* v. *Clapham ;* for it is evident the defendant spoke in

Hastings v. Lusk.

reference to the contradictory evidence which he intended to give in the cause, or which he already had given. If so, what he said was relevant, although perhaps not said at the right time. I am satisfied, therefore, that there is no law, either ancient or modern, which affords complete protection to parties or counsel, so as to bring the language used by them in the course of judicial proceedings within the second class of privileged communications which I have stated, except where the words complained of as slanderous were relevant or pertinent to the question to be determined by the court or jury.

There may be cases which properly belong to the first class of privileged communications, arising in the course of judicial proceedings. Parties and even counsel sometimes misjudge as to what is relevant and pertinent to the question before the court, and especially parties who are not much acquainted with judicial proceedings; and it may be very proper in such cases to leave it as a matter of fact for the jury to determine, whether the words were spoken in good faith, under a belief that they were relevant or proper, or whether the party using them was actuated by malice and intended to slander the plaintiff. The case of *Allen v. Crofoot*, 2 *Wendell*, 516, appears to be a case of this kind, for it is evident that the words spoken were not relevant in the judicial proceeding, or pertinent to any question then before the court. But as circumstances showed that the defendant either supposed he was bound to answer the question, or that it was relevant and pertinent to the proceedings, I think the court very properly decided that it should have been left to the jury to determine whether the defendant acted in good faith supposing it was relevant and proper to answer the question put to him by the plaintiff, although he had not yet been sworn as a witness on the examination of the complaint which he had previously made on oath, or whether he was actuated by malice. In cases belonging to that class of privileged communications, malice in fact may be inferred from the language of the communication itself, as well as from extrinsic evidence. *Wright v. Woodgate*, 1 *Gale's R.* 329.

But though the slanderous words were spoken in the course of a judicial proceeding and were relevant and pertinent to the matter in question, or the defendant may have used them in good faith supposing them to be pertinent, without actual malice or any intention of slandering the plaintiff, yet if these facts do not appear from the pleadings or the finding of the jury, it will not aid the defendant upon a motion in arrest of judgment.   On such motion the court cannot know that the slanderous words were pertinent, or that the plaintiff did not satisfy the jury that they were not only impertinent to the matter in question before the court, but also that the defendant spoke them with a malicious intent, for the mere purpose of defaming the plaintiff and wounding his feelings.   Such is the effect of the decision of the supreme court both in the case of *M' Claughry* v. *Wetmore, 6 Johns. R.* 82, decided nearly thirty years ago, and in the more recent case of *Ring* v. *Wheeler*, to which I have before referred.

Each of the counts in the plaintiff's declaration in this case contains more or less slanderous expressions, imputing the crime of perjury, in language which *prima facie* could not have been *pertinent* to any question before the court, for it does not appear to have been addressed to the court but to the plaintiff himself, who was a witness there : and if the defendant used all the abusive language towards or in reference to the witness which is stated in either of those counts, although some of it might have been relevant to the matter in question, no jury could hesitate in coming to a correct conclusion whether that which was not pertinent was uttered in good faith or with a malicious intent to defame the plaintiff; although the defendant must have proved that he had great provocation to excuse all this harsh language, or no honest jury could have given a verdict of only six cents against him.

The defence in this case is set up by several *special pleas* in addition to the *general issue ;* and the objection urged by the third point of the plaintiff in error is, that although the declaration may have been *prima facie* sufficient, the replications are bad, and sufficient is admitted upon the whole

record to constitute a good defence. On the other hand it is urged, that if there are any material issues the pleas are bad, and as the defendant committed the first fault in pleading, it is not a case for a *repleader.* I have examined the special pleas particularly, and think either of them would have been held good upon *general demurrer,* if I am correct in the conclusion at which I have arrived as to the law of the case. It is expressly stated by Mr. Justice *Buller,* that the defendant may by way of justification plead that the words were spoken by him as counsel in a cause and that they were pertinent to the matter in question, *or* he may give them in evidence under the general issue, for they prove him not to have been guilty of speaking the words maliciously. *Bull, N. P.* 10. *See also Lord Cromwell's case,* 4 *Coke's R.* 14. The two first special pleas, therefore, showing that the slanderous words stated in the declaration were spoken by the defendant in the judicial proceeding, while conducting his own defence without counsel, and that they were *pertinent* to the matter in question, constituted a good bar to the action, as they brought the case within the second class of privileged communications which I have noticed. To each of these pleas there were two replications, (as athorized by the revised statutes upon a special application to the court,) each of which replications was a good answer to the plea : one replication traversed the fact that the words spoken were either *pertinent* or *material* to the matter in question, and the other taversed the allegation in the plea that the words were used by the defendant in the matter in question before the justice, *while conducting his defence* therein ; and as the jury found a verdict for the plaintiff on all the issues, neither of those pleas can aid the defendant. In the last special plea the defendant, in addition to the facts stated in the two preceding pleas, also averred that the words were spoken *without any malice* towards the plaintiff, and therefore, if I am right in supposing that a party is not answerable for words innocently spoken by him in conducting his defence in a judicial proceeding, and without malice, although they may not have been strictly pertinent, perhaps a replication *merely denying the pertinency* of the

words would not have been a sufficient answer to this plea. The first replication to this special plea does, however, in substance, put in issue the question of *malicious intent* as well as the *pertinency* of the slanderous words, although the malice is only stated by way of inducement to the traverse of the malicious intent. As that part of the replication directly negatives the allegation in the plea which it was material to negative in connection with the traverse of the pertinency of the slanderous words, its effect, after verdict, must be different from the case of a replication which merely sets up new matter as inducement to the traverse and then traverses an immaterial allegation in the plea, leaving that which was most material unanswered. It is in this case at most but a misjoining of the issue, which is cured after verdict; and the jury have found in terms, in reference to this issue, that the words were spoken *falsely* and *maliciously*, and that they were *not pertinent* and material. Again: the second replication to this plea is a full answer to it, even if the first replication is stricken entirely out of the record; and upon the last replication the jury have found that the slanderous words were not uttered by the defendant while conducting his own defence on the examination before the justice, as alleged in his last special plea.

For these reasons I think the supreme court were right in refusing to arrest the judgment, and that their decision should be affirmed.

The court being *unanimously* of the same opinion, the judgment of the supreme court was accordingly AFFIRMED.