Battle, J.
 

 It is unnecessary for us to decide whether the charge against the defendant’s slave was too vague and indefinite to give the magistrates jurisdiction, because, supposing that they had it, no action can be sustained for words spoken
 
 *177
 
 upon such an occasion and under such circumstances as were those uttered by the defendant in this case.
 

 "When tlie slave was arrested and taken before the magistrates for examination, it was not only the right, but the duty of his master to appear in his defense,
 
 State
 
 v. Leigh, 3 Dev.
 
 &
 
 Bat. 127; the interest of the master, the dependent condition of the slave, and the fair administration of public justice, alike required it. Upon the trial the defendant had imposed upon him, all the obligation, and secured to him, all the rights of counsel, or of a party appearing for himself. After the plaintiff in this suit was sworn as a witness, it was undoubtedly competent for the defendant to insist before the magistrates in defense of his slave, that what the plaintiff had sworn was false; and we can see no difference whether that was insisted on in an elaborate argument, or in the short emphatic allegation which he thought proper to employ. What he said was certainly pertinent and material to the cause. The question then, is, can an action of slander be maintained against him for the words which he uttered, considered either as counsel or party ? We think that, upon principle, it ought not to be; and that the weight of authority is decidedly in favor of such principle.
 

 All human tribunals, established for the investigation of truth, must necessarily partake of human infirmity. In the prosecution and defense of suits before such tribunals, the testimony of fallible witnesses must often be relied on. To test the credibility of such witnesses, many rules have been laid down, by which it is sought to be discovered whether they, in the language of their oath, have told
 
 “
 
 the truth, the whole truth, and nothing but the truth,” or whether from defect of memory, from imp.erfect observation, or from a settled design to suppress or pervert the truth, they have withheld, or made a false statement of the material facts of the case. In carrying these rules into effect, the aid of counsel has, in all civilized countries, been allowed to such parties as desired it. To make that aid effectual, great latitude must necessarily be allowed to counsel, not only in the examination and cross-examination of
 
 *178
 
 tbe witnesses, but in commenting upon their testimony and upon their demeanor in giving it. They must be allowed to speak freely whatever is
 
 relevant
 
 and
 
 pertinent
 
 to the cause, without the fear of being harrassed with slander suits and by attempts to prove that they were actuated by malicious motives in the discharge of their duty. So manifest and so strong was the necessity for the allowance of this liberty of speech injudicial proceedings, that we find it early disclosing itself in the free spirit of the English common law. In
 
 Buckley
 
 v. Wood, 4 Rep. 146, the libel was contained in a bill’ in the Star-Chamber against Sir R. Buddy, charging him with divers matters examinable in that court, and also that he was a maintainer of pirates and murderers; and it was held that for any matter contained in the bill which was examinable in the Star-Chamber, “no action lies, although the matter is merely false, because it was in the course of justice; but for the latter words, which were not examinable in that court, an action on the case lies, for that cannot be in a course of justice.” Another strong case is to be found in 1 Roll’s Abr. pi. 817 (reported also by Sir
 
 W.
 
 Jones 431, and March 20 pi. 45). The substance of it was this: In an action on the case by A against B, the plaintiff declared that he took his oath in the King’s Bench against B, of certain matters to bind him to his good behavior, and thereupon B
 
 falsely and maliciously
 
 said, intending thereby to scandalize the plaintiff, “ there is not a word of truth in that affidavit and I will prove it by forty witnesses.” On a motion in arrest of judgment, after a verdict finding that the words were false and malicious, it was held by the court that the action could not be maintained; and the reason given was, “ that the answer which B made to the affidavit was a justification in law, and spoken in defense of himself and in a judicial way.” Again, in the case of
 
 Astley
 
 v. Young, 2 Burr. Rep. 807, the declaration charged that the defendant did
 
 maliciously
 
 make, exhibit and publish to the court of King’s Bench a
 
 malicious, false and sccmddlous
 
 libel contained in an affidavit, in which there were certain false,
 
 malicious
 
 and scandalous matters: the plea was, that the de
 
 *179
 
 fendant made the affidavit in his own defense 'against a complaint made to the court against him, for his refusing to grant an ale-license, and in answer thereto, and to an affidavit of the plaintiff. There was a general demurrer and joinder therein. After argument, in the course of which the plaintiff’s counsel urged that the defendant, by his plea, admitted the charge that the affidavit was made
 
 maliciously,
 
 there was a judgment for the defendant. Lord MaNseield, and the whole court of King’s Bench thereby deciding, that an action for defamation will not lie if the words, though spoken or written maliciously, were so spoken or written in a course of justice. The same principle was decided in the case of
 
 Hodgson
 
 v.
 
 Scarlett,
 
 1 Barn, and Ald. 232, (4 Com. L. Rep. 111), two of the Judges, Lord ElleNboeough, C. J., and Bayley, stating it without any qualification; Abbott, saying, that no action would lie “ unless it can be shown that the counsel availed himself of his situation maliciously to utter words wholly unjustifiable;” and ILot-boyd, concluding,
 
 “
 
 that if the words be fair comments upon the evidence, and be relevant to the matter at issue, then, unless express malice be shown, the occasion justifies them. If, however, it be proved that they were not spoken
 
 bona
 
 fide, or express malice be shown, then they may be actionable ; at least our judgment in the present case does not decide that they may not be so.” In the subsequent case of
 
 Flint
 
 v.
 
 Pike,
 
 4 Barn. & Cress. 473, (10 Com. L. Rep. 380,) decided in the same court, Bayley, J., said: “ The speech of a counsel is privileged by the occasion on which it is spoken; he is at liberty to make strong, even calumnious observations against the party, the witnesses, and the attorney in the cause. The law presumes he acts in discharge of his duty, and in pursuance of his instructions, and allows him this privilege because it is of advantage for the administration of justice that he should have free liberty of speech.” And Holboyd (the same eminent Judge whose remarks in the case of
 
 Hodgson
 
 v.
 
 Scarlett
 
 have been quoted,) used the following remarkable language:
 
 “
 
 With a view to the due administration of justice, counsel are privileged in what they say. Unless the administration of justice
 
 *180
 
 is to be fettered, they must have free liberty of speech in making their observations; which, it must be remembered, may be answered by the opposing counsel and commented on by the Judge, and are afterwards taken into consideration by the jury, who have an opportunity of judging how far the matter uttered by the counsel is warranted by the facts proved: therefore, in the course of the administration of justice, counsel have a special privilege of uttering matter, even injurious to an individual, on the ground that such a privilege tends to the better administration of justice. And if a counsel in the course of a cause, utter observations injurious to individuals, and not relevant to the matter in issue, it seems to me that he would not therefor be responsible to the party injured in a common action for slander; but that it would be necessary to sue him in a special action on the case, in which it must be alleged in the declaration and proved at the trial, that the matter was spoken maliciously, and without probable and reasonable cause.” The same principle was recognised by the court for the correction of errors in the State of New York, in the case of
 
 Hastings
 
 v.
 
 Lush,
 
 22 Wend. Rep. 410. The Chancellor, Walworth, (who delivered an elaborate opinion, in which the court
 
 uncminiously
 
 concurred,) after saying that no action of slander would lie against a member of Congress or of the State Legislature, acting in the discharge of his official duties, however false and malicious might be his words, uttered against the private reputation of an individual, spoke thus of the privilege of counsel:
 
 “
 
 Upon a full consideration of all the authorities on the subject, I think that the privilege of counsel, in advocating the causes of their clients, and of parties who are conducting their own causes, belongs to the same class, where they have confined themselves to what was
 
 relevant
 
 and
 
 perbinml
 
 to the question before the court; and that the motives with which they have spoken what was relevant and pertinent to the cause they were advocating, cannot be questioned in any action of slander.” In another part of the opinion, he says that counsel would not be protected in uttering calumnious words not
 
 relevant
 
 and
 
 pertinent
 
 to the matter
 
 *181
 
 before the court: “ Thus, if counsel in the argument of his client’s cause should avail himself of that opportunity to say of a party or a witness, against whom there was nothing in the evidence to justify a suspicion of the kind, that he was a
 
 thief
 
 or a
 
 murderer,
 
 it might be a proper case for a jury to say whether the counsel was not actuated by malice, and improperly availed himself of his situation as counsel to defame the party or witness.”
 

 The irresponsibility of counsel and parties, for words spoken in the course of a judicial proceeding, was adverted to by this Court in the recent case of
 
 Holmes
 
 v. Johnson, Busb. Rep. 44. The question was, whether the. defendant could be sued in an action for malicious prosecution for merely taking out a warrant against the plaintiff, charging him with larceny? The Court held that the action would lie : saying, that if the plaintiff could not avail himself of that action, he would be entirely without remedy; for that he could not sue for the slanderous words merely, “because they were spoken in the course of a judicial proceeding.”
 

 We are aware that there are some opinions, expressed by courts of high authority, which cannot be reconciled with those to which we have adverted; and among them stands the case of
 
 White
 
 v.
 
 Nicholls,
 
 decided by the Supreme Court of the United States, 3 How. Rep. 266.
 

 In delivering the opinion of the court, Justice DaNiel said upon the subject:
 
 “
 
 With respect to words used in a course of judicial proceeding, it has been ruled that they are protected by the occasion and cannot form the foundation of an action of slander without proof of express malice; for, it is said, it would be matter of public inconvenience and would deter persons from preferring their complaints against offenders, if words spoken in the course of their giving or preferring their complaints, should be deemed actionable.” For this the learned Judge refers to two cases,
 
 Johnson
 
 v. Evans, 3 Esp. N. P. C., 32, and
 
 Hodgson
 
 v.
 
 Scarlett, ubi supra.
 
 In the first of these, it is observable that Lord EldoN says, broadly, that
 
 “
 
 words used in the course of legal or judicial proceeding,
 
 *182
 
 however hard they might bear on the party of whom they were used, were not such as would support an action for slander,” and he does not give the slightest intimation that proof of malice would have made any difference. In referring to the other case, the Judge quotes the language of the two junior Judges, Abbott and IIoleotd, but does not notice that the two seniors Lord ElleNboRougii, C. J. and Bayley, J., state the principle of the irresponsibility of counsel for words spoken on the trial of a cause, and material and pertinent to the issue, without any qualification whatever. Of that case it is further to be remarked, that the two junior Judges, if they intended to say that the action of slander might- have been sustained had malice been proved, were hardly, justified in so doing consistent with the decision which they concurred in making. The plaintiff on the, trial before W.ood, Baron, had been non-suited as soon as it .had been ascertained that the words for which the action was brought were uttered by the defendant in the trial of a cause and were pertinent to the matter before the court: one of' the grounds of complaint, on the .motion for a new trial, was, that the Judge had stopped the cause too soon, without hearing the evidence, and yet the court of Ring’s .Bench
 
 unanimously
 
 concurred in refusing to set aside the non-suit. The opinion of the learned Judge in the Supreme Court of the United States is liable to the further remark, that though he afterwards refers to the case of
 
 Flint
 
 v.
 
 Pike, (ubi supra,)
 
 for another purpose, he does not notice the
 
 emphatic
 
 language of the same Judge IIolhoyd repudiating his former opinion, if that opinion is to be understood as Mr. Justice DaNiel conceives it.
 

 The language used by RuefiN, C. J., in pronouncing the opinion of this court in the. case of
 
 Briggs
 
 v.
 
 Bird,
 
 12 Ire. Rep. 317, may also be supposed to qualify the principle which we are, discussing, and not to sustain it in the unqualified terms in which we have stated it. He says, “a person is not answerable for any thing he says in honestly preferring a complaint before a justice of the peace, and
 
 <prima facie
 
 every application is to be deemed honest, and to have been
 
 *183
 
 preferred upon good motives, until the contrary be shown, because it is a duty to bring.offenders to justice.” “It is always open however to the opposite side to prove malice either by express evidence or by circumstances attending the accusation, or by others that are collateral; as for example, that the accuser had a particular grudge against the accused, .and knew the accusation to be unfounded. It is, therefore, the question in all such cases whether the party acted
 
 hona fide
 
 in making the complaint, or from a wicked and malicious mind.” These remarks were made in a case where the defendant spoke the words, for which the action was brought, before a magistrate to whom he had applied for a warrant charging the plaintiff with theft, but he did not take it out either then or afterwards. It is manifest then, that if his application for the warrant was not an honest one with a view to a criminal prosecution, his words could not be protected as having been made in the course of a judicial proceeding. In this view, the language of the Chief Justice may be justified without in any degree impugning our principle. It may be sustained also by supposing that he referred to the kind of action spoken of by IToleotd, J., in the extract which we have made from his opinion in the case of
 
 Flint v. Pike,
 
 to wit: “ A special action on the case, in which it must be alleged in the declaration, and proved at the trial, that the matter was spoken maliciously and without probable cause.” Iiowe'ver this may be, and however it may be held with respect to the responsibility of a counsel or party uttering words against the character of a witness, or the opposite party, in the course of a trial, not
 
 relevant
 
 to the cause, we think that we have shown by abundant authority, that a counsel or party is entirely protected against an action of slander for whatever he may choose to say relevant and pertinent to the matter before the court, and that no inquiry into his motives will be permitted. Our conclusion in this case, therefore, is, that if the defendant’s coun-' sel had prayed an instruction that the action for slander could not, upon the facts proved, be sustained at all, it ought to have been given; but as the counsel did not ask for so strong and
 
 *184
 
 decisive an instruction, the Judge committed no error in not giving it; neither would he have erred had he given the very instruction prayed, to wit, that
 
 express
 
 malice must be proved, because the defendant could not have complained of an instruction which he himself had requested. But as his Honor did not give that instruction, but on the contrary told the jury that malice might be
 
 inferred
 
 from the repetition of the words and the profane language with which they were accompanied, he did thereby commit an error, which the defendant has a right to have corrected on another trial. The rule in relation to instructions to a jury is, that “ although it be not error to refrain from giving instructions unless they be asked, yet care must be taken, when the Judge thinks it proper, of his own motion, or at the party’s, to give them, that they be not in themselves erroneous, or so framed as to mislead the jury.”
 
 Bynum
 
 v. Bynum, 11 Ire. Rep. 632.
 

 With respect to the profane language used by the defendant, it may not be improper for us to say, that it was a contempt of the magistrate’s court, for which he might have been punished by fine and imprisonment; but it did not alter the relation in which he stood to the cause. What he said of the plaintiff was
 
 rd&oemt
 
 and
 
 pertment
 
 to the defense which he had a right to set up for his slave, and no malice could be inferred from it.
 

 Pee Cueiam. Judgment reversed.