# HARLOW *v.* CARROLL.

LIBEL ; PRACTICE ; EVIDENCE ; IDENTITY OF NAMES.

1. False and scandalous matter contained in the answer to a bill in equity and concerning the complainant, is not privileged if irrelevant, and if libelous will subject the defendant to an action of libel. And its relevancy or irrelevancy is a question of law for the court.

2. But in an action of libel so brought the plaintiff must prove her identity with the complainant in the equity suit. Identity of names is not sufficient to make out a *prima facie* case.

No. 375. Submitted December 10, 1894. Decided January 7, 1895. Opinion on rehearing May 6, 1895.

HEARING on an appeal by the plaintiff from a judgment on a verdict directed by the court in an action of libel. *Affirmed.*

The facts are sufficiently stated in the opinion.

*Mr. W. A. Meloy* for the appellant.

*Mr. Thomas M. Fields* for the appellees.

Mr. Justice MORRIS delivered the opinion of the Court:

This is a suit for libel, in which the court below directed a verdict for the defendants ; and the cause is here on exceptions to that ruling.

The libel complained of in the declaration is there stated to have consisted in the insertion of certain false, scandalous and defamatory matter in an answer filed by the defendant, Ellic S. Carroll, to a bill in equity filed against him by the plaintiff, Sarah Harlow, to recover possession of a shawl claimed by her to have been deposited with him as security for the payment of an indebtedness. The libellous matter charged was the following statement :

" Respondent was informed by a detective who had been employed to look up complainant's antecedents and past career that she was a procuress and engaged in other unlawful practices, and was of no veracity or reputation."

The answer in which this statement was contained was signed by the defendant, Thomas M. Fields, as solicitor ; and for that reason and as thereby co-operating to publish the libel, he is joined as a defendant with Carroll in this suit.

Upon the general issue pleaded by the defendants, and joinder of issue thereon, the parties went to trial. And at the trial, the plaintiff read the bill of complaint in the equity suit that has been mentioned, and the defamatory paragraph from the answer that has been cited. She also proved the signature of the defendant, Carroll, to the answer, and that of the defendant, Fields, as solicitor, and also that the paragraph complained of had been ordered by the equity court to be stricken out as irrelevant, impertinent and scandalous. And this was all the testimony in the case. The defendants offered no testimony. It is stated in the bill of excep-

tions that " the plaintiff was not present in person and was not examined as a witness at said trial."

Thereupon, at the request of the defendants, the court directed the jury to render a verdict in their favor; and the plaintiff excepted.

The burden of the argument before us was whether the alleged libellous matter was of a privileged character, so that no suit at law could be maintained for it.   The alleged libel was unquestionably without justification; and no animadversion would be too severe that would prevent the records of courts of justice from being made the vehicle of such scandalous and defamatory publications.   But we are excused from following the arguments on the question of privilege in such cases, and from entering into a discussion of the scope and extent of such privilege by the fact that the plaintiff has neglected to prove a most important element in her case.

It was alleged, and properly and sufficiently alleged, in the declaration, that the libellous matter in question had been published of and concerning the plaintiff; but there is no evidence in the cause to connect it with the plaintiff. There is no testimony whatever of any kind to show that the plaintiff in this suit was the complainant in the equity suit.   If we are to assume the identity of person, we must infer it from the identity of name; and we are not aware of any rule of law that justifies such an inference in the case of ordinary names, unconnected with any circumstances that would tend to indicate identity.   It was easy enough to adduce the proof; and it is strange that it should not have been adduced.   But we are not authorized to supply the deficiency either by inference or otherwise.

The effect of the statement in the bill of exceptions, that the plaintiff was not present and did not testify at the trial, seems to have been mistaken by counsel on both sides. There is no rule of law or of propriety that demands that the plaintiff in a civil action should actually be present in court at the trial of that action.   Trials very often proceed

in the absence of parties, notwithstanding that they are usually assumed to be technically present.   The statement in the bill of exceptions would, therefore, be meaningless, except as indicating that the plaintiff, who would herself be the best witness for the purpose, had failed to prove her identity with the complainant to the equity suit.

For this defect in the plaintiff's proof, we think that the court below was right in directing a verdict for the defendants ; and we must, therefore, *affirm the judgment with costs. And it is so ordered.*

On January 21, 1895, a motion for a rehearing was made by *Mr. Meloy*, on behalf of the appellant, which was allowed, and a rehearing had on April 2, 1895.

*Mr. W. A. Meloy* for the appellant.

*Mr. Thomas M. Fields* for the appellees.

On May 6, 1895, Mr. Justice Morris delivered the opinion of the court :

A petition for rehearing in this cause was presented and allowed, and a reargument of the case has been had, both upon the principal question of privilege involved, and upon the question of the sufficiency of the proof of identity made by the plaintiff.   The facts of the case are stated in our former opinion, and need not here be repeated.

1. The principal question in the case is whether an action at law can be sustained against a defendant and his counsel for alleged libellous matter contained in an answer filed by them to a bill in equity, such alleged libellous matter having been ordered by the court of equity, upon the motion of the plaintiff (the complainant in equity) to be stricken from the pleading as irrelevant, impertinent and scandalous. As already stated, the suit in equity had been instituted by Sarah Harlow against Ellic S. Carroll to procure the restoration to her of certain personal property, a certain shawl, stated to be of exceptional value, which had been deposited by her with Carroll as a security for the payment of

an indebtedness ; and in the answer of Carroll, which was signed by him and by Fields as his counsel, but which is not given in the record in this case, the alleged libellous matter occurs as follows :

" Respondent was informed by a detective who had been employed to look up complainant's antecedents and past career that she was a procuress and engaged in other un-lawful practices and was of no veracity or reputation."

On behalf of the appellees, it is claimed that this matter, occurring as it does in a judicial proceeding, is absolutely privileged ; and that the persons concerned in making the statement cannot be held to accountability for it in a suit at common law for libel. And it is argued that the remedy, if remedy there is, must be sought in the court where the alleged libellous matter was uttered by proceedings in the nature of proceedings for contempt. It seems to be understood and conceded by the parties that this was the view taken by the court below.

On the other hand, on behalf of the appellant, it is argued that libellous matter is not privileged because uttered in judicial proceedings, unless it appears to have been relevant or to have some reference or relation to the matters in issue in the proceedings. And it is argued that the matter here complained of was libellous in itself, and had no relevancy to the subject-matter of the suit in which it was uttered.

We do not understand the appellees to contend that the statement complained of was not in itself libellous. That seems to be conceded. It seems to be conceded, also, that the statement was, what the court of equity decided it to be, "irrelevant, impertinent and scandalous." Severe strictures and grave charges of misconduct occasionally occur in judicial proceedings ; and in the nature of things it is impossible that such statements should not occur, inasmuch as the wrongs which they characterize are among the things which courts, especially courts of equity, are frequently called upon to redress. But it is not often that courts are

invoked to give a remedy for utterances so grossly libellous and so wantonly unnecessary as the statement for which this suit has been instituted. That statement had not the remotest bearing upon the matter in controversy between the parties to the suit in equity. No person, even the most depraved of women, should be debarred of their just rights in courts of justice, for the reason that they are depraved, or because they have happened to commit crime. There is no such thing as legal outlawry in our American jurisprudence. Fallen women have, or should have, as many rights before the law as their seducers; and it is no more becoming in the members of the legal profession to stone them in the courts of justice when they come into them, or are brought into them, in the enforcement of rights, than it was for the infuriated rabble to stone them in the ages of barbarism. Greatly worse is it, in a suit in equity such as is mentioned in these proceedings, to impute unchastity to a woman complainant as a matter of assumed defense, when the subject-matter of the suit had no reference whatever to her character for virtue, and her right to succeed in the suit could not be dependent in any manner upon that character. It is but simple justice, therefore, to characterize the statement in question as wantonly and grossly libellous.

But is it privileged, nevertheless, as claimed on behalf of the appellees in this case? For if it is privileged upon any good ground of public policy, the present suit cannot be maintained.

The extent of the immunity to which counsel and witnesses are entitled for words spoken or testimony given by them in the course of judicial proceedings is a question upon which it must be admitted that the authorities are by no means uniform. If the rule of the English courts upon the subject is to be regarded as settled by the comparatively recent case of *Munster* v. *Lamb*, Law Rep. 11 Q. B. Div. 588, decided in 1883, in favor of the absolute privilege and immunity both of counsel and witnesses in such cases, and which appears to be in antagonism to the great

májority of the preceding decisions in England and to the
great authority both of Coke and Blackstone, we must
suppose that the public policy and the professional condi-
tions in that country now demand a greater latitude than
would seem to have been justified by previous adjudica-
tions.

In that case it was said: " For the purpose of my judg-
ment, I shall assume that the words complained of were
uttered by the solicitor maliciously ; that is to say, not
with the object of doing something useful towards the de-
fense of his client ; I shall assume that the words were ut-
tered without any justification or even excuse, and from the
indirect motive of personal ill will or anger towards the pros-
ecutor, arising out of some previously existing cause ; and
I shall assume that the words were irrelevant to every
issue of fact which was contested in the court where they
were uttered ; nevertheless, inasmuch as the words were
uttered with reference to, and in the course of, the judicial
inquiry which was going on, no action will lie against the
defendant, however improper his behavior may have been.
*   *   *   The rule is founded upon public policy.
With regard to counsel, the question of malice, *bona fides*,
and relevancy cannot be raised ; the only question is,
whether what is complained of has been said in the course
of the administration of the law.   If that be so, the case
against counsel must be stopped at once.   No action of
any kind, no criminal prosecution can be maintained against
a defendant, when it is established that the words com-
plained of were uttered by him as counsel in the course of
a judicial inquiry."

This is certainly broad doctrine, strongly stated ; and
coming from a court so eminent as England's chief appel-
late tribunal, it is entitled to our most profound respect.
But we are wholly unable to subscribe to its logic or to
accept its conclusion.   The theory is startling that an ad-
vocate may violate the criminal law with impunity if he
does it in a court of justice and in the course of a pending

suit in which he is concerned. And it is almost equally startling to think that a court of justice should be the only place, or perhaps it would be more correct to say, one of the few places, where a man's good name and reputation may be assailed with impunity by the way of oral slander or written libel.

We do not ignore the dictate of public policy that demands the utmost freedom consistent with reason in the conduct by counsel, parties, and witnesses, of their respective parts in judicial proceedings. The freedom of speech which is guaranteed by our Federal Constitution is nowhere more needed than in courts of justice, where it has been the immemorial privilege of the advocate and the guarantee of his faithful and fearless performance of his duty. But freedom of speech does not mean licentiousness ; and the officer of justice, which the advocate is assumed to be, should not be privileged, before God or man, to commit wanton injustice. In checking licentiousness, we do not think that there is any danger that freedom will suffer ; for licentiousness is the worst foe of freedom.

We think the just rule in regard to this question of privilege was stated by the Supreme Court of Massachusetts, by Chief Justice SHAW, in the case of *Hoar* v. *Wood*, 3 Metc. 193, when it said : " This privilege must be restrained by some limit ; and we consider that limit to be this : that a party or counsel shall not avail himself of his situation to gratify private malice by uttering slanderous expressions, either against a party, witness or third person, which have no relation to the cause or subject-matter of the inquiry."

Chancellor WALWORTH, in the case of *Hastings* v. *Lusk*, 22 Wend. 410, stated it as follows : "Upon a full consideration of all the authorities on the subject, I think that the privilege of counsel in advocating the causes of their clients, and of parties who are conducting their own causes, belongs to the same class, where they have confined themselves to what was relevant and pertinent to the question before the court."

We do not know that any good purpose would be sub-
served by a review of the adjudications upon this subject.
Such a review to be satisfactory should be exhaustive ; and
we think it has been sufficiently done in various cases that
have been cited.    Such a review may be found in the case
of *Maulsby* v. *Reifsnider*, 69 Md. 143, in which, in a very
elaborate opinion by Mr. Justice ROBINSON, the subject was
fully examined, and the leading cases, both English and
American, very fully analyzed: and the rule laid down by
Chief Justice SHAW, in the case of *Hoar* v. *Wood*, was ac-
cepted as the true and correct doctrine upon the subject.
Said the Court of Appeals· of Maryland in the case of
*Maulsby* v. *Reifsnider*:

"In view of this unbroken line of decisions, both in Eng-
land and in this country, we cannot accept the absolute and
unqualified privilege laid down in *Munster* v. *Lamb*.    It is
in the teeth of the decisions in *Brook* v. *Montague*, Croke
Jac. 50, and *Hodgson* v. *Scarlett*, 1 Barn. & Ald. 332, and
*Mackay* v. *Ford*, 5 Hurl. & Norman, 790 ; and is not sus-
tained by *Revis* v. *Smith*, 18 Com. Bench, 125 ; *Henderson*
v. *Broomhead*, 4 Hurl. & Norman, 567 ; *Dawkins* v. *Lord
Rokeby*, Law Rep. 7 English and Irish App. 752, or *Sea-
man* v. *Netherclift*, Law Rep. 2 Com. Pleas. Div. 53.    We
cannot agree with Brett, M. R., that, in a suit against coun-
sel for slander, the only inquiry is whether the words were
spoken in a judicial proceeding, and if so, the case must be
stopped.    We quite agree, however, with Bramwell, J. A.,
in *Seaman* v. *Netherclift*, that ' *relevant* ' and ' *pertinent* ' are
not the best words that could be used.    These words have
in a measure a technical meaning, and we all know the diffi-
culty in determining in some cases what is relevant or perti-
nent.    With Lord Chancellor Cairns, we prefer the words,
'*having ref*e*rence*,' or '*made with reference* ; ' or, in the lan-
guage of Shaw, C. J., '*having relation to the cause or subject-
matter*.'    And if counsel in the trial of a cause maliciously
slanders a party, or witness, or other person in regard to a
matter that had no *reference* or *relation* to, or connection

with, the case before the court, he is and ought to be answerable in an action by the party injured. This qualification of his privilege in no manner impairs the freedom of discussion so necessary to the proper administration of the law, nor does it subject counsel to actions for slander, except in cases in which upon reason and sound public policy he ought to be held answerable. We cannot agree that for the abuse of his privilege he is amenable only to the authority of the court. Mere punishment by the court is no recompense to one who has thus been maliciously and wantonly slandered."

In the more recent case of *Moore* v. *Manufacturers' National Bank of Troy*, 123 N. Y. 420, the Court of Appeals of the State of New York had occasion to pass upon the question, and it did not hesitate to follow the ruling of Chancellor WALWORTH in the case of *Hastings* v. *Lusk*, 22 Wend. 410, already cited, which was the same that was made by the Supreme Court of Massachusetts in the case of *Hoar* v. *Wood, supra,* through Chief Justice SHAW. The law was there stated as follows :

" There is another class of privileged communications where the privilege is absolute. They are defined in *Hastings* v. *Lusk*, 22 Wend. 410. In this class are included slanderous statements made by parties, counsel or witnesses, in the course of judicial proceedings, and also libellous charges in pleadings, affidavits, or other papers used in the course of the prosecution or defense of an action. In questions falling within the absolute privilege the question of malice has no place. However malicious the intent, or however false the charge may have been, the law, from considerations of public policy, and to secure the unembarrassed and efficient administration of justice, denies to the defamed party any remedy through an action for libel or slander. This privilege, however, is not a license which protects every slanderous publication or statement made in the course of judicial proceedings. It extends only to such matters as are relevant or material to the litigation, or at

least it does not protect slanderous publications plainly irrelevant and impertinent, voluntarily made, and which the party making them could not reasonably have supposed to be relevant. *Ring* v. *Wheeler*, 7 Cow. 725 ; *Hastings* v. *Lusk*, 22 Wend. 410 ; *Gilbert* v. *People*, 1 Den. 41; Grover, J., in *Marsh* v. *Ellsworth*, 50 N. Y. 309 ; *Rice* v. *Coolidge*, 121 Mass. 393 ; *McLaughlin* v. *Cowley*, 127 Mass. 316.

"Where the claim of privilege is interposed as a defense to an action for libel or slander, it is not the test of privilege that the words were uttered or published on a privileged occasion. Where there are several distinct charges, some privileged and some not privileged, those not privileged are not justified by the charges that are privileged. *Clark* v. *Roe*, 4 Ir. C. L. 1 ; *Tuson* v. *Evans*, 12 Ald. & Ell. 733 ; *Warren* v. *Warreu*, 1 C. M. & R. 250. The policy upon which the doctrine of privilege rests does not call for an extension of the privilege to such cases. The public interests are sufficiently protected when the privilege is limited to communications which fairly ought to have been made, or in cases of judicial proceedings to matters not wholly outside of the cause. But no strained or close construction will be indulged in to exempt a case from the protection of privilege."

This case of *Moore* v. *Manufacturers' National Bank* was decided in 1890. Neither in the opinion of the court, nor in the dissenting opinion of two of the justices—which dissent, it may be remarked, is not upon the question here discussed—nor in the argument of counsel does there appear to have been any reference to the case of *Munster* v. *Lamb*, decided in England seven years before, as already stated. But the doctrine enunciated by the Court of Appeals of New York is emphatically antagonistic to that laid down by the English court, and is believed to be in accord with the vast preponderance of judicial decision in America.

The cases of *White* v. *Nicholls*, 3 How. 266, and *Randall* v. *Brigham*, 7 Wall. 523, are cited to the contrary; as also the cases of *Bartlett* v. *Christhilf*, 69 Md. 219 ; *Hunckel* v.

*Vonieff*, 69 Md. 179, and others.    But these cases are clearly
distinguishable from the present; and most, if not all of
them, tend to support the rule laid down by Chief Justice
SHAW.    Indeed, the cases of *White* v. *Nichols* and *Randall*
v. *Brigham* tend rather to a greater restriction of the priv-
ilege than has been stated in the decisions heretofore cited
from the courts of Maryland, Massachusetts and New York.
The cases of *Bartlett* v. *Christhilf* and *Hunckel* v. *Vonieff*
were decided by the Maryland Court of Appeals about the
same time as the case of *Maulsby* v. *Reifsnider*, and are re-
ported in the same volume; but they are very carefully dis-
tinguished by the court from the latter case.    In the case
of *Bartlett* v. *Christhilf*, the privilege was upheld on the
ground that the matter complained of, a libellous petition
or affidavit filed by a party to a suit, was in due course of
judicial proceedings and entirely relevant thereto, although
false and malicious ; and the case of *Hunckel* v. *Vonieff* was
that of a witness in an equity cause, whose statement on
the witness stand was reduced to writing and used in evi-
dence in the cause, and which statement was alleged to be
maliciously false.    It was not quite certain in this case that
the statement of the witness was wholly irrelevant, or had
no relation to the cause ; but the court bases its decision
mainly upon the ground that a witness, between whom and
counsel in a cause there is a very sharp distinction to be
observed, is entitled to the broadest immunity and most
absolute privilege.

Without further review of the authorities, we may say
that we are of opinion that the cause of justice can never
be subserved by the perpetration of palpable injustice, and
that there can be no just rule of public policy that would
not clearly distinguish between reasonable freedom of speech
and the wantonness of unjustifiable malice.    There is no
danger that the right of fearless advocacy will be unduly
restricted by this limitation upon the privilege ; for the mat-
ter, to which the privilege does not extend, must be so pal-
pably wanting in relation to the subject-matter of contro-

versy as that no reasonable man can doubt its irrelevancy
and impropriety; and it will always be a matter of law for the
judge, and never a question of fact for the jury, to deter-
mine that irrelevancy and impropriety.

It has been urged upon us that the court, in which the
alleged libellous or slanderous matter has been uttered, is
competent to deal with the whole subject, to expunge the
libellous matter from the record, as was done in this case,
and to punish the libel or slander as a contempt. And this
is evidently the theory of the English court in the case of
*Munster* v. *Lamb, supra.* But it is very plain that such pun-
ishment is but poor reparation to the person injured. Pun-
ishment for contempt is punishment for an indignity offered
to the court; it is no reparation to the aggrieved person for
the injury that has been done to him at the same time. As
well might it be claimed that an assault and battery com-
mitted in the presence of the court in the course of a judicial
proceeding, would be wholly condoned, after a fine imposed
for contempt, and thereafter forever privileged from suit,
either civil or criminal. Wanton libel and slander wholly
irrelevant and uncalled for, are no more entitled to the privi-
lege of immunity from suit than are assault and battery, or
any other violation of right.

In our discussion of this question, we have not deemed
it necessary to take note of the well recognized distinction
between slander and libel. The latter, of course, is the
more heinous, because more deliberate and willful. The
distinction would merely tend to restrict the privilege more
in cases of libel than in those of slander.

We are of opinion that the libellous matter complained of
in this case was not privileged; and that both counsel and
client concerned in its utterance are liable in a suit at law
to the person injured thereby.

2. But there is another question in this case, which is of
importance; and that is, whether the plaintiff has made any
proof whatever of her identity with the person of whom the
alleged libellous matter was uttered. Our former decision

in the case was based upon the fact that we found no proof whatever in the record of any such identity ; and our conclusion in that regard has not been altered by the reargument.

It is argued that the identity of the name of the plaintiff in this cause and of the complainant in the equity suit in which the libellous matter was uttered, is sufficient *prima facie* evidence to go to the jury to show the identity of the person. And it is urged upon us also, that this question was not made in the court below, where the whole discussion, it is said, was upon the question of privilege. But if the question was not in fact made in the court below, it is certainly made by the bill of exceptions. For, as we have already stated in our former opinion in the case, the statement in that bill that " the plaintiff was not present in person and was not examined as a witness at said trial," can have no other reasonable significance than to call attention to the absence of proof of identity. And if it be true, as stated in argument by counsel for appellant, that this statement was introduced into the bill of exceptions by the justice who tried the cause without the knowledge of counsel and after the bill had been delivered to him by the latter, this circumstance tends strongly to show that the justice had in mind this want of proof and based his decision as well upon that as upon what he believed to be the privilege and immunity of the parties. At all events we do not feel at liberty to regard the statement as meaningless ; and under the circumstances, we can extract no other meaning from it than that which we have stated. Whether the attention of counsel might not have properly been called to the defect at the time, it is not for us to determine. Nor can we take notice of the circumstances under which, it •is alleged, the plaintiff was accidentally prevented from being present in the court room at the trial. Those circumstances might well form the basis of a motion for a new trial addressed to the discretion of the justice who tried the cause ; but it is not apparent how

we can take them into consideration.   What we have be-
fore us and have to consider is the bill of exceptions, in
which it plainly appears that there was no proof whatever
of the identity of the plaintiff in this cause with the person
of whom the libellous matter was uttered, and from which
we are compelled to infer that this absence of proof entered
into the decision of the court below.   It is greatly to be
regretted, we think, that the decision of the cause should be
made to depend on a question like this, which might so
easily have been solved by the most formal proof.   But are
we at liberty to disregard the question because it might so
easily have been solved ?   Are we at liberty to hold that
the ruling of the court below was error, when plainly it
was not error, merely because the defect was one of inad-
vertence, and might easily have been supplied ?   However
much we might wish it, we can not think that we have the
right so to do.

Not only is there no proof in the case of the identity of
the plaintiff with the person libelled, but there is no proof
even of the plaintiff's name.   And we are asked to import
the plaintiff's name from the declaration into the bill of
exceptions, and thereupon to hold that the jury might infer
therefrom the desired identity.   But a declaration of itself
proves nothing, not even the names of the parties to it ;
and it cannot be made to supply the place of proof, in the
absence of statute or rule of court, in the face of a plea of
the general issue that puts the plaintiff upon proof of every
substantial statement contained in it.   Nothing can be
taken for granted where everything is required to be proved.

Notwithstanding that we hold the appellant's main con-
tention in this case as sustained both by reason and by
authority, we are compelled, upon the ground just stated, to
affirm the ruling of the court below.   *The judgment of
that court is therefore affirmed, with costs.*